THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN DANIELS, a/k/a Brian Triplett, Defendant-Appellant.

First District (1st Division)   Nos. 86—1775, 86—2085 cons.

Opinion filed August 8, 1988.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, Patricia Y. Brown, and James M. Sullivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

Defendant Brian Daniels (also known as Brian Triplett) appeals from the order of the circuit court of Cook County in case No. 86—1775 which, on remand from this court, imposed two consecutive 60-year sentences for defendant's home invasion and armed robbery convictions to be served concurrently with two five-year sentences imposed for the defendant's two aggravated battery convictions. Daniels also appeals from an order in case No. 86—2085, which amended the mittimus in that case and clarified that the 30-year sentence imposed for the defendant's murder conviction there was to be served consecutively with the sentences imposed in case No. 86—1775. The defendant filed a separate notice of appeal from the sentences imposed in each of these cases. Thereafter, this court granted the defendant's motion to consolidate the appeals.

The defendant initially contends that the trial court in case No. 86—1775 abused its discretion in imposing an improperly disparate 120-year sentence on him as compared to the 30-year sentence which his accomplice received after entering a guilty plea and cooperating with the State in the trial of the case against defendant. The facts underlying the imposition of the 120-year sentence on Daniels and the 30-year sentence on Gilcrest are as follows. On January 4, 1982, Brian Daniels, also known as Brian Triplett, and Carl Gilcrest broke into the home of two elderly women after Daniels cut their telephone wires and then tapped on the window to get their attention. While Margaret Bernak unsuccessfully attempted to call the police, her sister, Emma Mattis, tried to hold the front door shut. Daniels forced the door open, throwing Mattis into the wall behind the door. Daniels and Gilcrest then entered the house. Daniels first hit Mrs. Mattis, the woman behind the front door, on her head and shoulders. Daniels next proceeded to the kitchen, where he knocked Mrs. Bernak to the floor with such force that her leg and ankle broke. Carl Gilcrest tore off a piece of the molding from the broken door

frame and began beating Mrs. Bernak while Daniels went into Mrs. Bernak's bedroom and returned with a wallet and a jewelry box from the bedroom. Mrs. Mattis attempted to stop Gilcrest from beating her sister, but she was unsuccessful, and then fled from the house and yelled for help. At that point, several neighbors intervened and chased Daniels and Gilcrest out of the house. As a result of the injuries sustained during the home invasion, Mrs. Mattis and Mrs. Bernak were hospitalized for two and three weeks, respectively.

Brian Daniels and Carl Gilcrest were later charged with two counts of home invasion, robbery, and aggravated battery. Defendant Daniels was convicted on two counts of home invasion, two counts of armed robbery, and two counts of aggravated battery, and, on August 23, 1983, he received consecutive 60-year sentences for each home invasion count and each armed robbery count which were to run concurrently with a 10-year sentence for each aggravated battery count. Subsequently, this court on appeal vacated one of the home invasion counts, one of the armed robbery counts, and the extended-term sentence for aggravated battery, affirmed the other counts, and remanded the case for resentencing. (*People v. Daniels* (1985), 138 Ill. App. 3d 1070, 487 N.E.2d 39.) On remand, the same trial judge resentenced defendant to consecutive 60-year terms on the remaining home invasion and armed robbery count and imposed concurrent five-year terms for the two counts of aggravated battery. Gilcrest, as noted earlier, had entered a guilty plea on the morning the case was set for trial, and, after testifying against Daniels, received a 30-year sentence.

Defendant asserts in this appeal that, even if this court should find that the 120-year sentence imposed on him was not an abuse of discretion, the consecutive sentences were still excessive and exceeded the statutory limit for consecutive sentences under paragraph 5—8—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4) because a consecutive sentence was also imposed for the unrelated home invasion and murder conviction in case No. 86—2085. In the sentencing order in case No. 86—2085, the trial judge stated that the sentence was to be served "consecutive to any sentences that [he received] in other cases." Daniels had also appealed that case to this court; and, in a Rule 23 order (*People v. Daniels* (1st Dist. 1985), No. 84—0997), we affirmed one of the murder convictions but vacated two other murder convictions and the home invasion conviction and remanded the case to the trial court for an amendment of the mittimus to clarify the consecutive nature of the murder sentence. On remand, the trial court ordered the clerk

of the court to amend the original order to show that the 30-year murder sentence was to be served consecutively to the 120-year sentence in case No. 86—1775. Hence, Daniels contends that even though these consecutive sentences, *i.e.*, in case No. 86—2085 and case No. 86—1775, were imposed for unrelated offenses, they must be read together to determine if the maximum term permitted by the statute has been exceeded. The defendant cites *People v. Hillenbrand* (1988), 121 Ill. 2d 537, 521 N.E.2d 900, to support his assertion that any ambiguity in the statute concerning its application here to his sentences in these separate cases must be resolved in favor of lenience. Daniels concludes that because the maximum extended term for murder is 80 years and the maximum extended term for a Class X felony is 60 years, in any event, the maximum sentence that would be allowable here is 140 years and not 150 years (the 120-year sentence in case No. 86—1775 plus the 30-year consecutive sentence in case No. 86—2085).

Finally, Daniels argues that the trial court's amendment of the mittimus in case No. 86—2085, without affording him an opportunity to be represented by counsel or to present argument, was a denial of his sixth amendment right to representation at one of the crucial phases of the adjudication and, thus, a resentencing hearing is required to cure this error. On June 6, 1986, when the remanded case, No. 86—2085, was called before the trial court, the defendant was present in the courtroom without an attorney. The State, represented by the prosecutor in case No. 86—1775, stated to the court: "I believe your Honor intended that the mittimus originally should have reflected that this man's sentence on this case should be consecutive to the case, the sentence on the case which I prosecuted [No. 86—1775]." The court responded: "That is exactly what my intention was, and evidently it was not clear from the record." The court then stated that this was an administrative act as opposed to an act involving an exercise of discretion and ordered the clerk of the court to clarify the consecutive nature of the 30-year murder sentence.

As stated, defendant first argues that the disparate nature of the sentence between himself and his accomplice, Carl Gilcrest, who pleaded guilty before trial and testified against the defendant, was so grossly disproportionate to Mr. Gilcrest's sentence that it constituted an abuse of discretion. We agree.

■ Daniels specifically argues that the 120-year sentence imposed on him in case No. 86—1775 is excessive in comparison to the 30-year sentence that his accomplice, Carl Gilcrest, received. The

facts of this case are similar to those found in the decision of *People v. Jackson* (1986), 145 Ill. App. 3d 626, 495 N.E.2d 1207, in which we found that the trial court improperly imposed sentences with a 50-year disparity where the record demonstrated that it was the co-defendant who had threatened, robbed, beaten, and then strangled the victim during the assault and, thus, was the more culpable offender. Here, as in *Jackson,* it was Gilcrest, and not Daniels, who had taken the molding from the door frame and had beaten the woman during the home invasion. Gilcrest testified at trial that Daniels did not strike either woman with the wooden molding and that it was his idea to beat one of the women to keep her quiet. A comparison of Daniels' conduct with that of Gilcrest's conduct in this case demonstrates that even if the defendant were the aggressor, which is not at all clear from the record, the imposition of a sentence four times and 90 years greater on Daniels than that imposed on Gilcrest is too great a disparity to be sustained. In *People v. Bares* (1981), 97 Ill. App. 3d 728, 423 N.E.2d 538, the trial court had given the defendant a sentence four times greater than his accomplice based on differences in the degree of participation in the armed robbery, the prior criminal records, and the attitudes of the defendants at trial. In reviewing the defendant's sentence, the appellate court reversed, finding the disparity in sentencing too great to be consistent with fundamental fairness. (*Bares,* 97 Ill. App. 3d at 738, 423 N.E.2d at 545.) Here, as in *Bares,* fundamental fairness mandates that Daniels receive a sentence more similar to that imposed on his accomplice, Gilcrest. (See *People v. Martin* (1980), 81 Ill. App. 3d 238, 245, 401 N.E.2d 13, 18.) Accordingly, we conclude that, under the circumstances presented in this case, the trial court abused its discretion in imposing a sentence on Daniels that was four times greater than the sentence imposed on his accomplice.

■■ ■ Additionally, Daniels has argued that the trial court refused to take into account his prison activities since sentencing, which included his employment, his completion of a commercial photography class in prison, and the fact he was in the top educational class at prison and was only 10 credits short from receiving a bachelor's degree, in determining the proper sentence. At the resentencing hearing, the trial court stated that it was unimpressed with Daniels' accomplishments in prison since the time his first sentence was imposed. Although it is true that evidence of good prison conduct following the original sentence does not, standing alone, entitle a defendant to a sentence reduction on remand (*People v. Young* (1987), 152 Ill. App. 3d 361, 364, 504 N.E.2d 115, 117), we believe

that in this case the trial court should have given some consideration to the defendant's prison conduct, and also should have considered the defendant's youth, as an important factor in determining his rehabilitative potential. (See *People v. Williams* (1978), 62 Ill. App. 3d 966, 379 N.E.2d 1268.) At the time he was charged in this case, Daniels was only 18 years old. It is the duty of the sentencing judge under the constitution to further the rehabilitation potential of a defendant, if at all possible, so that he may reenter society at some point in time as a productive member. (Ill. Const. 1970, art. I, § 11; *People v. Williams* (1978), 62 Ill. App. 3d 966, 976, 379 N.E.2d 1268, 1276; *People v. Young* (1987), 152 Ill. App. 3d 361, 370, 504 N.E.2d 115, 120 (Quinlan, P.J., dissenting).) Hence, we find the trial court's determination that consecutive sentences were necessary in case No. 86–1775 was an abuse of discretion. *(People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) Therefore, we direct that the sentences of 60 years on the home invasion and the armed robbery convictions imposed in case No. 86–1775 be served concurrently rather than consecutively. See *People v. Johnson* (1982), 104 Ill. App. 3d 572, 432 N.E.2d 1232.

Next, addressing the defendant's additional claim that the composite consecutive sentences in the two unrelated cases, *i.e.*, case No. 86–1775 and case No. 86–2085, exceeded the statutory maximum, we note that the trial courts in both these cases had the authority to impose extended-term consecutive sentences. Neither sentence by itself exceeded the statutory maximum. However, as noted, Daniels has argued that the sentences here must be read together under the language of section 5–8–4(c)(2) (Ill. Rev. Stat. 1985, ch. 38, par. 1005–8–4(c)(2)), which provides that "the aggregate of consecutive sentences shall not exceed the sum of the maximum terms *** for the 2 most serious felonies involved." Further, Daniels asserts that any ambiguity in the statute must be construed in favor of leniency, again citing *People v. Hillenbrand* (1988), 121 Ill. 2d 537, 521 N.E.2d 900.

■ In *Hillenbrand,* the court was confronted with a question concerning which of two sentencing statutes of the criminal code applied to the defendant under the unique circumstances of that case. There, our supreme court stated that any ambiguity had to be resolved in a manner that would be most lenient to the defendant. Here, Daniels argues that there is, at least, an ambiguity in the sentencing statute, and thus, analogous to the situation in *Hillenbrand,* the applicability of the consecutive sentences provision must be resolved in favor of leniency for the defendant here. However, we need

not decide this issue, because whether the statute is ambiguous is irrelevant in Daniels' situation, since we have already determined that Daniels' two 60-year sentences in case No. 86—1775 should be served concurrently. Under Daniels' reduced sentence in case No. 86—1775, his sentences now comply with either proffered interpretation of the statute, and, hence, whether section 5—8—4 applies to sentences imposed in more than one case or is merely a directive to the Department of Corrections for purposes of determining parole eligibility and good time credits, as the State claims, is not controlling here. (Cf. People v. Cunitz (1978), 59 Ill. App. 3d 701, 705, 375 N.E.2d 1020, 1023; People v. Sumner (1976), 43 Ill. App. 3d 133, 135, 356 N.E.2d 819, 820 (Barry, J., concurring in part and dissenting in part).) The modification of Daniels' sentences here will result in Daniels' receiving consecutive sentences for only the two most serious felonies for which he was convicted which, defendant admits, complies with the requirements of the statute. Cf. People v. Hillenbrand (1988), 121 Ill. 2d 537, 521 N.E.2d 900.

■ Lastly, Daniels has contended that the trial court in People v. Daniels (No. 86—2085) denied his sixth amendment right to representation when it amended the mittimus without affording him the right to representation at the "hearing." However, the case which defendant cites in support of his contention that he was denied a right to representation at a crucial phase of the adjudication, Mempa v. Rhay (1967), 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254, is inapplicable. In Mempa, the defendants were denied the right to representation at hearings to revoke their paroles and to impose prison sentences for alleged violations of parole. There the unrepresented defendants were asked incriminating questions by the trial judge, were not permitted to cross-examine State witnesses, hearsay evidence was admitted against them, and the defendants were prevented from offering mitigating evidence on their own behalf. Here, only the mittimus was amended at the trial proceedings, and no hearing took place. Also, although our supreme court in People v. Baker (1982), 92 Ill. 2d 85, 440 N.E.2d 856, recognized that a defendant has a constitutional right to be represented by counsel at the sentencing stage of a proceeding, the defendant here had already been sentenced at the time he now claims he was entitled to representation. He does not, however, claim that he was inadequately represented at the sentencing stage of the criminal proceedings. Hence, the cases he cites, Mempa and Baker, are inapplicable to the present case.

The nature of the proceeding before the trial court here was not,

therefore, as the defendant contends, a "hearing" involving a crucial stage of the proceedings against the defendant. The defendant's guilt or innocence was not involved, nor was the defendant's liberty interest at stake. Rather, the proceeding below was solely administrative in nature; accordingly, there properly was no argument from either the prosecution or the defense. The judge who corrected the mittimus was the same judge who presided at the original trial, and his amendment of the original sentencing order did not necessitate the testimony of witnesses or any argument. These circumstances are almost identical to those found in *People v. Ferguson* (1951), 410 Ill. 87, 101 N.E.2d 522, in which our supreme court held that the defendant was not entitled, as a matter of right, to be present when proceedings were taken to correct the record. (Accord *People v. Michael* (1961), 23 Ill. 2d 338, 178 N.E.2d 389.) Consequently, we find that the defendant here had no right to representation.

For the above reasons, we affirm the 60-year sentences imposed in *People v. Daniels* (No. 86—1775) but modify the judgment to provide for those sentences to run concurrently on both counts. We further affirm the 30-year murder sentence in *People v. Daniels* (No. 86—2085), which will run consecutively with the sentences imposed, as modified, in case No. 86—1775. Thus, the defendant is sentenced in case No. 86—1775 to a term of 60 years' imprisonment for his conviction on home invasion, 60 years' imprisonment for his armed robbery conviction, five years' imprisonment for each of the two aggravated battery counts, and all of these sentences will run concurrent to each other. Also, the concurrent sentences in case No. 86—1775 will now, as noted above, run consecutively with the sentence of 30 years imposed for his murder conviction in case No. 86—2085.

Cause No. 86—1775, judgment affirmed as modified.
Cause No. 86—2085, judgment affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.